UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE SMITH & NEPHEW BIRMINGHAM HIP RESURFACING (BHR) HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2775<br>Master Docket No. 1:17-md-2775<br><br>JUDGE CATHERINE C. BLAKE<br><br>This Document Relates to:<br><br>ALL CASES |

**DEFENDANT SMITH & NEPHEW, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE *DE BENE ESSE* DEPOSITION OF TIM BAND AND SMITH & NEPHEW CORPORATE REPRESENTATIVE IN ADVANCE OF TRIAL**

Smith & Nephew, Inc. ("Smith & Nephew") respectfully submits this opposition to Plaintiffs' motion for leave to take *de bene esse* depositions [D.E. 2980] ("Motion").

Plaintiffs improperly seek to take additional depositions—long after the close of discovery and after the first bellwether trial—of witnesses concerning topics and documents about which Plaintiffs *already* have conducted numerous depositions during the discovery period in this MDL. Plaintiffs have not demonstrated "good cause" to take additional *de bene esse* depositions of Tim Band or of a Smith & Nephew corporate representative outside the discovery period. Their Motion should be denied.

***First***, Plaintiffs have had ample opportunity to question Tim Band. He already has been deposed twice in this MDL (as well as five additional times in state court cases). In addition, Mr. Band is a U.K. resident who is no longer employed by Smith & Nephew. Another deposition of Mr. Band is not warranted, and, in all events, Smith & Nephew lacks the power to compel Mr. Band to sit for yet another deposition.

***Second***, general liability discovery has long been closed in this MDL, and Plaintiffs cannot modify the discovery schedule by seeking *de bene esse* depositions. The Fourth Circuit does not

distinguish *de bene esse* depositions from discovery depositions, and therefore Plaintiffs are not entitled to take additional (let alone duplicative) depositions **after** discovery has closed. *See Tatman ex rel. Tatman v. Collins*, 938 F.2d 509, 510 (4th Cir. 1991) ("The Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*)"); *Capital Finance, LLC v. Rosenberg*, No. 1:17-cv-02107, 2019 WL 2119839, at *2 (D. Md. Jan. 3, 2019) (cited in Motion at 2-3) ("Rule 30 does not make a distinction between a discovery deposition and a trial deposition" and "such depositions should ordinarily be subject to the same discovery deadline").

**Third**, Plaintiffs have not established "good cause" to take additional depositions **after** discovery has closed. *See* Fed. R. Civ. P. 16(b)(4). Plaintiffs *already* deposed Tim Band twice in this MDL. Plaintiffs argue that (i) "Smith & Nephew produced a substantial percentage of documents after the close of depositions," and (ii) Tim Band "was deposed before many of the above documents were actually produced." Motion at 2, 7 (emphasis omitted). In fact, all but one of the documents identified in Plaintiffs' Motion (or their duplicates) were produced **before** one or both of Tim Band's depositions, and Plaintiffs have asked myriad witnesses about many of these documents.

Nor is there "good cause" to reopen discovery for additional Rule 30(b)(6) depositions. During the years of discovery conducted in this MDL, Plaintiffs deposed numerous witnesses regarding ad hoc data, "Dear Doctor letters" and other marketing activities, and medical education, the same topics about which they nevertheless now argue they want a deposition from a corporate representative. *Id*. at 1, 8-9. There is no basis to reopen discovery to take additional depositions— long after the close of discovery and the conclusion of the first MDL trial in *Redick*—on documents and topics that Plaintiffs have had every opportunity to cover, and in fact *have* covered previously. Indeed, to the extent that Plaintiffs were permitted to reopen discovery, then fundamental fairness

2

would dictate that Smith & Nephew also should be permitted to engage in discovery on these same topics, including, for instance, updating expert reports and additional expert depositions. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 138 F. Supp. 3d 1, 3 (D.D.C. 2015) (declining to reopen discovery for defendants because it would be unfair to plaintiffs, and would "necessitate even further additional discovery" by them). There is no basis on which to re-open discovery, which will only needlessly consume resources and divert attention from preparation for upcoming trials. Plaintiffs' Motion should be denied.

## BACKGROUND

The period for general liability discovery in this MDL began in late 2018 and ended in early 2021. *See* Second Amended Case Management Order No. 16 [D.E. 2243] § II.1.A ("The close of general liability fact discovery for all BHR Track cases is July 15, 2020."); Case Management Order No. 18 [D.E. 2399] § II.1.A ("The close of general liability fact discovery for all THA Track cases is February 19, 2021."); Motion at 1 (arguing that depositions took place during Smith & Nephew's document production that "spanned more than two full years"); *id.* at 2 (conceding that "discovery has closed"). During that time, Plaintiffs took dozens of depositions of current and former Smith & Nephew employees, including corporate representatives who testified pursuant to Federal Rule 30(b)(6). Plaintiffs deposed Tim Band twice in this litigation, first on July 9, 2019 in the BHR Track, and again on January 22, 2020 in the THA Track.

Plaintiffs' Motion identifies twelve documents about which Plaintiffs want to depose Tim Band, Motion at 5-7, arguing that Mr. Band "was deposed before many of the above documents were actually produced." *Id.* at 7. In fact, only one of the documents (or their duplicates) identified by Plaintiffs was produced after Mr. Band's depositions. The chart below identifies the dates of Mr. Band's depositions and dates the documents (or duplicates) identified in Plaintiffs' Motion were produced.

3

| | **Documents Identified In Plaintiffs' Motion** | **Production Date** |
|---|---|---|
| | SN_BHR_MDL_0777009 (Ex. C to Motion) | 11/01/18 |
| | SN_BHR_MDL_0777010 (duplicate of SN_BHR_MDL_0975377 (Ex. C to Motion))[1] | 11/01/18 |
| | SN_BHR_MDL_0089762 (duplicate of SN_BHR_MDL_3409550 (Ex. B to Motion)) | 11/09/18 |
| | SN_BHR_MDL_10090713 (Ex. G to Motion) | 11/09/18 |
| | SN_BHR_MDL_0137824 (Ex. B to Motion) | 12/29/18 |
| **First Band Deposition** | | 02/09/19 |
| | SN_BHR_MDL_0485243 (Ex. C to Motion) | 03/01/19 |
| | SN_BHR_MDL_0485180 (Ex. E to Motion) | 03/01/19 |
| | SN_BHR_MDL_0571547 (cited in Motion at 8) | 03/26/19 |
| | SN_BHR_MDL_1041480 (Ex. D to Motion) | 06/29/19 |
| | SN_BHR_MDL_1080580 (Ex. H to Motion) | 07/31/19 |
| | SN_BHR_MDL_2187381 (Ex. F to Motion) | 12/31/19 |
| **Second Band Deposition** | | 01/22/20 |
| | SN_BHR_MDL_226218 (duplicate of SN_BHR_MDL_2933873 (Ex. A to Motion))[2] | 02/01/20 |

As to the one document produced *after* Mr. Band's depositions, Plaintiffs argue that it is relevant because it pertains to the BHR as a "cash cow." Motion at 5. But Plaintiffs already deposed Mr.

---

[1] Exhibits B and C to Plaintiffs' Motion each include multiple documents. Therefore, the production date for each document included in these composite exhibits is included in this chart.

[2] Indeed, one of the documents that Plaintiffs identify (SN_BHR_MDL_2187381) (Ex. F to Motion) was an exhibit at Mr. Band's second deposition.

Band extensively on this same topic and regarding documents that use this same phrase. Indeed, his testimony explaining his use of the term "cash cow" was presented at the *Redick* trial. Further, most of the documents identified in Plaintiffs' Motion were exhibits introduced at various other witnesses' depositions, so Plaintiffs already have had ample opportunity to inquire about them.[3]

Plaintiffs' Motion also identifies three topics about which they want to depose a corporate representative under Rule 30(b)(6): (i) ad hoc data, (ii) medical education, and (iii) Dear Doctor Letters and other marketing materials. Motion at 1, 2, 8. These are all subjects, however, that Plaintiffs have already addressed multiple times with multiple witnesses.

*Ad hoc data*. With regard to ad hoc data, Smith & Nephew previously produced Blair Fraser as a corporate representative to testify about the post-market surveillance of the performance of the BHR, a topic that includes ad hoc data. *See* Deposition of Blair Fraser ("Fraser Dep") (Oct. 24, 2018) (Ex. A). Plaintiffs also deposed Mr. Fraser *three additional times* as a fact

---

[3] *E.g.,* **SN_BHR_MDL_0137824** (Ex. B to Motion) (addressed at June 19, 2019 deposition of Tom Troup); **SN_BHR_MDL_0777009** (Ex. C to Motion) (addressed at depositions of Naseem Amin, Gino Rouss, and Dave Telling on Oct. 17, 2019, Jan. 15, 2020, and Jan. 24, 2020); **SN_BHR_MDL_0485243** (Ex. C to Motion) (addressed at Oct. 17, 2019 deposition of Naseem Amin, and at Nov. 19, 2019 deposition of Dr. Edwin Su); **SN_BHR_MDL_2187381** (Ex. F to Motion) (addressed at depositions of Dave Telling, Tom Pynsent, Tim Band, and Peter Heeckt on Jan. 15, 2020, Jan. 17, 2020, Jan. 22, 2020, and Dec. 1, 2020); **SN_BHR_MDL_1080580** (Ex. H to Motion) (addressed at Oct. 17, 2019 deposition of Naseem Amin and at Dec. 1, 2020 deposition of Peter Heeckt). Additional documents identified in Plaintiffs' Motion were addressed at depositions of experts and/or case-specific witnesses. For instance, **SN_BHR_MDL_0777009** and **SN_BHR_MDL_0485243** (Ex. C to Motion) were addressed at the deposition of Ms. Mosca's implanting surgeon, Dr. Boucher, on Feb. 7, 2020. **SN_BHR_MDL_2933873** (Ex. A to Motion) was addressed at the deposition of Smith & Nephew's expert, Dr. Brent Kerger, on Nov. 2, 2020. **SN_BHR_MDL_0090713** (Ex. G to Motion) was addressed at the deposition of Smith & Nephew's expert, Dr. Donna-Bea Tillman, on Oct. 28, 2020.

witness, after his 30(b)(6) deposition. At *all four of his depositions*, Mr. Fraser testified about ad hoc data.[4]

Plaintiffs also have deposed other witnesses regarding ad hoc registry data and Smith & Nephew's use of that data, including:

- Peter Heeckt, a former Smith & Nephew Chief Medical Officer, Heeckt Dep. (Dec. 12, 2020);

- Dave Telling, Smith & Nephew's former Director of Quality and Regulatory Affairs, who was directly responsible for Smith & Nephew's post-market surveillance of the BHR, Telling Dep. (Jan. 15, 2020); Telling Dep. (Aug. 28, 2020);

- Naseem Amin, Smith & Nephew's former Chief Science Officer, Amin Dep. (Oct. 17, 2019);

- Gino Rouss, a former Smith & Nephew employee in the Regulatory Affairs department, Rouss Dep. (Jan. 24, 2020);

- Carolyn Shelton, Smith & Nephew's former Vice President of Regulatory Affairs for Advanced Surgical Devices, Shelton Dep. (Feb. 12, 2020); and

- Andrew Weymann, a former Smith & Nephew Chief Medical Officer, Weymann Dep. (Jan. 15, 2020).

*Medical education.* As set forth above Blair Fraser—Smith & Nephew's former Vice President of Medical Education for the Americas between 2008 and 2012—already was deposed four times in this MDL, during which he was asked about his role in medication education. *E.g.,* Fraser Dep. (Oct. 24, 2018) (Ex. A) at 11 ("Q. I know you sort of came up through Medical Education at the company. Is that fair? A. That was one of my roles. Yes."); *id*. at 225 ("Q. Okay. When is the first time you became involved with anything to do with BHR? A. 2008. Q. What did you do there related to the BHR? A. I ran the Medical Education Group."); *see also,*

---

[4] *E.g.,* Fraser Dep (Oct. 24, 2018) (Ex. A) at 109-10, 115-16, 121-22; Fraser Dep (Sept. 19, 2019) (Ex. B) at 85-99, 128-30; Fraser Dep (Nov. 14, 2019) (Ex. C) at 53-55, 59-62, 65-72; Fraser Dep. (Ex. D) (Jan. 29, 2020) at 66-68, 138-41.

*e.g.,* Fraser Dep. (Jan. 29, 2020) (Ex. D) at 42, 47 (Plaintiffs' counsel asking questions of Mr. Fraser "as the person from 2008 through 2012 in charge of medical education in the Americas," and "as the medical education person that was responsible for the training program"). Plaintiffs also deposed Joan Overhauser—Smith & Nephew's former Director of Medical Education—twice in this MDL. *See* Overhauser Dep. (June 21, 2019); Overhauser Dep. (Jan. 15, 2021).

Plaintiffs have also deposed several other witnesses about Smith & Nephew's medical education programs, including:

- Tim Bourne, a former BHR Product Manager, Bourne Dep. (Aug. 22, 2019);

- Peter Heeckt, Smith & Nephew's former Chief Medical Officer, Heeckt Dep. (Dec. 1, 2020);

- Blair DeWeese, Smith & Nephew's former Global Marketing Manager for the BHR, DeWeese Dep. (Aug. 16, 2019); and

- Mark Waugh, Smith & Nephew's former Vice President of Global Hip Marketing, Waugh Dep. (June 13, 2019).

***Dear Doctor Letters and other marketing materials.*** Smith & Nephew already has produced John Clausen as a corporate representative on these exact topics. Clausen Dep. (Nov. 14, 2018). During his deposition, Plaintiffs questioned Mr. Clausen about at least seven different Dear Doctor letters, as well as a variety of other marketing material. *E.g.,* Clausen Dep. (Nov. 14, 2018), Exs. 14, 18, 26, 27, 29, 31, 45.

Plaintiffs thereafter deposed at least eight additional current and former Smith & Nephew employees within the Medical Education, Marketing, and Marketing Communications groups, all of whom had responsibility for the BHR during their employment with Smith & Nephew, and all of whom were questioned about dear doctor letters and/or other BHR marketing:

- Andrew Burns, Smith & Nephew's Vice President of Global Marketing Services, who also held other roles with BHR responsibilities, including Director of Direct-to-Consumer Marketing and Senior Director of Marketing Communications, Burns Dep. (Nov. 13, 2019);

7

- Dave Archer, Smith & Nephew's former Group Director of Marketing Communications, Archer Dep. (Sept. 26, 2019);

- Michael Cooper, Smith & Nephew's former Senior Global Marketing Manager for Hips, Cooper Dep. (Aug. 14, 2019);

- Blair DeWeese, Smith & Nephew's former Global Marketing Manager, DeWeese Dep. (Aug. 16, 2019);

- Steve Miller, Smith & Nephew's former Director of Sports Marketing, Miller Dep. (Oct. 22, 2019);

- Tom Troup, Smith & Nephew's former Group Director of Marketing, who was also a Sales Director with BHR responsibilities, Troup Dep. (June 19, 2019);

- Russell Walter, Smith & Nephew's Senior Director of Primary Hips, who was also previously a Marketing Manager for Hips, Walter Dep. (June 12, 2019); and

- Mark Waugh, Smith & Nephew's former Group Director of Hip Resurfacing, who also held positions as Group Director of Global Marketing and Vice President of Hip Marketing, Waugh Dep. (June 13, 2019).

## ARGUMENT

Plaintiffs' request for leave to take *de bene esse* depositions should be denied. As an initial matter, Tim Band is located in the U.K. and has not been a Smith & Nephew employee since January 2021, so Smith & Nephew cannot compel him to attend another deposition. Additionally, as set forth below, (i) Plaintiffs are not entitled to *de bene esse* depositions under the Federal Rules or Fourth Circuit precedent, and (ii) Plaintiffs have not established "good cause" to take depositions after the discovery period has closed under Federal Rule 16(b)(4).

**I.   PLAINTIFFS ARE NOT ENTITLED TO *DE BENE ESSE* DEPOSITIONS AFTER THE CLOSE OF DISCOVERY.**

Neither the Federal Rules nor relevant case law supports Plaintiffs' request to take *de bene esse* depositions after the close of discovery. The Fourth Circuit has explained that "[t]he Federal Rules of Civil Procedure make no distinction for use of a deposition at trial between one taken for discovery purposes and one taken for use at trial (*de bene esse*). Moreover, we are unaware of any

8

authority which makes that distinction." *Tatman*, 938 F.2d at 510-11 (citing Fed. R. Civ. P. 32; collecting cases). Rather, Rule 32 "provides that a deposition may be offered at trial, subject to the rules of evidence, as though the witness were present and testifying, and no distinction is now made in the rule with respect to the purpose for which the deposition was taken." *Id*. at 511. Therefore, there is no need for a *de bene esse* deposition because where, as here, "the witness' deposition was duly noticed and all parties had the opportunity to attend (and did attend), it may be introduced at trial, subject to the rules of evidence, if the witness is unavailable as described in Rule 32(a)(3)." *Id*.

Plaintiffs argue, mistakenly, that "[c]ourts routinely allow trial depositions to be taken 'even after the discovery deadline has passed' in cases where witnesses have already been deposed as part of general discovery." Motion at 3. In fact, the only District of Maryland case cited in Plaintiffs' Motion reiterates that the Federal Rules do "not make a distinction between a discovery deposition and a trial deposition," and "such depositions should ordinarily be subject to the same discovery deadline." *Capital Finance*, 2019 WL 2119839, at *2. Although the Court recognized in *Capital Finance* that "some courts allow such [*de bene esse*] depositions to take place beyond the discovery deadline when there are circumstances that would so justify," *id*., those circumstances were *not* present, and the Court denied plaintiff's request to take a *de bene esse* deposition of a fact witness after the close of discovery, where "there were alternatives available to Plaintiff that would likely have avoided this predicament" of wanting to preserve the witness's testimony for trial. *Id*.

Other courts within the Fourth Circuit similarly recognize that there is no distinction between discovery and trial depositions, and both are governed by applicable discovery schedules. *E.g., Tube City IMS, LLC v. Severstal U.S. Holdings, LLC*, No. 5:12-cv-31, 2014 WL 4782957, at *4 (N.D. W. Va. Sept. 24, 2014) (denying request to take trial deposition, because "[i]n this case,

9

[the witness's] deposition is sought after discovery is closed and with little time for the defendants to prepare for a deposition before trial," and "[t]he Fourth Circuit has not recognized a right to such deposition"). The decision in *In re Horstemeyer*, 557 B.R. 427, 432 (D.S.C. 2016), is instructive. There, the court acknowledged that "[s]ome district courts from within the Fourth Circuit have allowed *de bene esse* depositions to be taken after the discovery period has closed," but explained that "those cases involved local rules that specifically permit *de bene esse* depositions outside of the discovery period." *Id.* In that case, and in this District, "no local rule addresses taking *de bene esse* depositions outside of the discovery period," and therefore "Plaintiff has no absolute right to take a *de bene esse* deposition of [the witness]." *Id.*[5] The additional case law that Plaintiffs cite does not support a contrary rule.[6]

---

[5] *See also George v. Ford Motor Co.*, No. 03 Civ. 7643, 2007 WL 2398806, at *12 (S.D.N.Y. Aug. 17, 2007) ("[B]oth discovery and *de bene esse* depositions 'are governed by the scheduling order' set by the Court, and may not be conducted after the close of discovery absent good cause to modify that order."); *Henkel v. XIM Prods., Inc.*, 133 F.R.D. 556, 557 (D. Minn. 1991) (denying request to take trial deposition outside of discovery period, because "[n]either the Rules of Civil Procedure nor the Rules of Evidence make any distinction between discovery depositions and depositions for use at trial," and "[t]he court concludes there is no difference").

[6] For instance, *In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, No. 12-md-2391 (N.D. Ind. Feb. 27, 2019) [D.E. 3758] (cited in Motion at 3) does not support Plaintiffs. There, the court provided an "explanation to transferor courts" of the status of that MDL. The court allowed limited "preservation depositions" only of "generic expert witnesses," and left it to the transferor courts to rule on the admissibility of such depositions at trial. *Id.* at 9. The court did not provide any analysis of this procedure, indicate if it was contested or agreed upon, and significantly, did *not* permit preservation depositions of current or former company witnesses who had already been deposed. *Id.* at 7-8 ("The plaintiffs had a full opportunity to seek discovery from Biomet; the scheduling order contemplated that no further discovery from Biomet would be allowed."). *Lucas v. Pactiv Corp.*, No. 5:08-cv-00079, 2009 WL 5197838 (W.D. Va. Dec. 22, 2009) (cited in Motion at 3-4), was distinguished by the court in *Horstemeyer* as involving "local rules that specifically permit *de bene esse* depositions outside of the discovery period," 557 B.R. at 432, and the court in *Lucas* evidently was unaware of the "clear Fourth Circuit guidance" rejecting any distinction between discovery and *de bene esse* depositions. 2009 WL 5197838, at *2; *compare with Tatman*, 938 F.2d at 510-11. In *In re Nat'l Prescription Opiate Litig.*, No. 21-3041, 2021 WL 3777638 (6th Cir. Jan. 12, 2021) (cited in Motion at 4), the court declined to stay a scheduled deposition on defendant's petition for a writ of mandamus, where plaintiffs sought a preservation deposition of their *own* expert, based on a showing that he would be unavailable at trial because of a pending

Here, as Plaintiffs concede, "discovery has closed," and no local rule supports the taking of *de bene esse* depositions outside of the discovery period. Motion at 2. Plaintiffs' request for *de bene esse* depositions comes more than a year **after** the close of BHR Track general liability fact discovery, more than six months **after** the close of THA Track general liability fact discovery, and **after** the conclusion of the first MDL trial. Pursuant to Fourth Circuit precedent, there is no distinction between *de bene esse* depositions and the dozens of discovery depositions that Plaintiffs have already taken, and Plaintiffs are not permitted to obtain additional testimony under the guise of untimely *de bene esse* depositions.

In any event, there is no need for such a deposition here because Plaintiffs already have taken Tim Band's deposition twice in this MDL, and introduced his deposition testimony at trial in the *Redick* case.[7] Likewise, Plaintiffs do not cite any precedent for the use of a *de bene esse* deposition to obtain additional Rule 30(b)(6) testimony.[8] And Plaintiffs also have already obtained extensive testimony from Smith & Nephew witnesses regarding ad hoc registry data, Dear Doctor letters and other marketing activities, and medical education, the topics about which they seek additional corporate testimony. Plaintiffs had every opportunity during discovery to obtain deposition testimony for use at trial. *See Capital Finance*, 2019 WL 2119839, at *2 (denying discovery where "there were alternatives available to Plaintiff[s] that would likely have avoided this predicament"). Plaintiffs have obtained testimony from Tim Band, from myriad witnesses

---

appointment in the then-incoming Biden administration, and where the deposition was scheduled "*before the time specified in Rule 26*," *i.e.*, within the discovery period. *Id*. at *2 (emphasis added).

[7] Tim Band has also been deposed five times in related state-court cases, for a total of seven depositions on BHR-related products.

[8] *De bene esse* depositions, even when permitted, are typically used to preserve the testimony of a party's *own* witness, not an adversarial party's witnesses or corporate representative. *E.g., Capital Finance*, 2019 WL 2119839, at *2 n.3; *Lucas*, 2009 WL 5197838, at *3 ("attorneys do not normally depose their own witnesses for discovery purposes because they already know what these witnesses will say when they testify").

pertaining to the topics on which they seek testimony, and regarding most of the documents identified in their Motion, all of which they can seek to admit at trial subject to the Rules of Evidence.[9]  In short, Plaintiffs have neither a right to, nor a need for, *de bene esse* depositions.

## II. PLAINTIFFS HAVE NOT ESTABLISHED "GOOD CAUSE" TO TAKE ADDITIONAL GENERAL LIABILITY DEPOSITIONS.

Plaintiffs' Motion also should be denied because they have not demonstrated "good cause" to take additional depositions outside of the discovery period.  *See* Motion at 4 ("The court has the discretion to allow depositions taken after the close of discovery for good cause shown.") (citing Fed. R. Civ. P. 16(b)(4)); *id*. at 7-9 (arguing "good cause" to take requested depositions).

Rule 16(b)(4) specifies that "[a] schedule may be modified only for good cause and with the judge's consent," *id.*, and therefore, "[t]o reopen discovery, Plaintiff must satisfy the good cause standard of Rule 16(b)(4)."  *Edwards v. Edwards*, No. 12-3761, 2014 WL 1573504, at *3 (D. Md. Apr. 18, 2014); *see also Tube City IMS, LLC*, 2014 WL 4782957, at *4 (declining to modify discovery schedule under Rule 16(b)(4) to allow *de bene esse* deposition, because "good cause had not been shown by the plaintiff").

Courts apply six factors in analyzing motions to re-open or take untimely discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Saray Dokum ve Madeni Aksam Sanayi Turizm A.S. v. MTS Logistics Inc.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) (quoting *Jacobs v. N.Y.C. Dep't of Educ.*, No. 11-cv-5058, 2015 WL 7568642,

---

[9] To the extent Plaintiffs' argument focuses on wanting to introduce exhibits at trial about which they do not have testimony, most documents identified in their Motion were introduced at one or more depositions.  In any event, during the *Redick* trial, the Court allowed Plaintiffs to introduce into evidence and show to the jury certain documents for which there was no sponsoring witness.

at *3-4 (E.D.N.Y. Nov. 24, 2015)); *see also, e.g.*, *Bookhamer v. Sunbeam Prods., Inc.*, No. C 09-6027, 2012 WL 5269677, at *7 (N.D. Cal. Oct. 23, 2012) (same).

"The primary consideration of the court in addressing whether 'good cause' has been shown under Rule 16(b) relates to the movant's diligence. Lack of diligence and carelessness are the 'hallmarks of failure to meet the good cause standard.' '[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.'" *Edwards*, 2014 WL 1573504, at *3 (internal citations omitted); *Drasovean v. Eaton Corp.*, No. 11-1288, 2012 WL 5409737, at *1 (D. Md. Nov. 5, 2012) (similar). *See also, e.g., Saray*, 335 F.R.D. at 52 ("The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order. . . . Thus, a 'party seeking to reopen discovery must show why the court's deadlines could not reasonably have been [met] despite its diligence.'").

Here, Plaintiffs have not shown "good cause" to re-open discovery and take untimely depositions of Tim Band or a Smith & Nephew corporate representative.

***First***, trials are not only imminent, but the first MDL trial *already has occurred*. Though the second trial—only a few weeks away at the time Plaintiffs filed their Motion—has been postponed, the parties have more than enough remaining trial preparation and pending motion practice in both the BHR and THA Tracks to complete in the interim. In all events, Plaintiffs should not be permitted to reopen discovery *after* the first trial. Doing so is unnecessary in light of the discovery that already has occurred, which addressed each of the topics identified by Plaintiffs in their Motion. Plaintiffs may not reopen discovery simply because they were disappointed in the result of the first MDL trial in *Redick*. Consolidation in this MDL was intended to "conserve the resources of the parties, their counsel, and the judiciary," United States Judicial Panel on Multidistrict Litigation Transfer Order (Apr. 5, 2017) [D.E. 81 in MDL 2775] at 2, not

at *3-4 (E.D.N.Y. Nov. 24, 2015)); *see also, e.g.*, *Bookhamer v. Sunbeam Prods., Inc.*, No. C 09-6027, 2012 WL 5269677, at *7 (N.D. Cal. Oct. 23, 2012) (same).

"The primary consideration of the court in addressing whether 'good cause' has been shown under Rule 16(b) relates to the movant's diligence. Lack of diligence and carelessness are the 'hallmarks of failure to meet the good cause standard.' '[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.'" *Edwards*, 2014 WL 1573504, at *3 (internal citations omitted); *Drasovean v. Eaton Corp.*, No. 11-1288, 2012 WL 5409737, at *1 (D. Md. Nov. 5, 2012) (similar). *See also, e.g., Saray*, 335 F.R.D. at 52 ("The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order. . . . Thus, a 'party seeking to reopen discovery must show why the court's deadlines could not reasonably have been [met] despite its diligence.'").

Here, Plaintiffs have not shown "good cause" to re-open discovery and take untimely depositions of Tim Band or a Smith & Nephew corporate representative.

***First***, trials are not only imminent, but the first MDL trial *already has occurred*. Though the second trial—only a few weeks away at the time Plaintiffs filed their Motion—has been postponed, the parties have more than enough remaining trial preparation and pending motion practice in both the BHR and THA Tracks to complete in the interim. In all events, Plaintiffs should not be permitted to reopen discovery *after* the first trial. Doing so is unnecessary in light of the discovery that already has occurred, which addressed each of the topics identified by Plaintiffs in their Motion. Plaintiffs may not reopen discovery simply because they were disappointed in the result of the first MDL trial in *Redick*. Consolidation in this MDL was intended to "conserve the resources of the parties, their counsel, and the judiciary," United States Judicial Panel on Multidistrict Litigation Transfer Order (Apr. 5, 2017) [D.E. 81 in MDL 2775] at 2, not

provide Plaintiffs a means to conduct a never-ending discovery-trial-discovery loop with which to adjust their strategy.[10]

***Second***, Smith & Nephew opposes Plaintiffs' request to take untimely depositions, for all of the reasons set forth herein.

***Third***, Smith & Nephew would be unfairly prejudiced by having to defend additional depositions pertaining to witnesses, topics, and documents that were already the subject of extensive discovery, rather than preparing for trial based on the expansive discovery record that was created over multiple years. *See Capital Finance*, 2019 WL 2119839, at *2 (denying request for *de bene esse* depositions after the close of discovery, due in part to the "burden on Defendants" of additional discovery); *Bookhamer*, 2012 WL 5269677, at *7-8 (denying motion to reopen discovery under six-factor test where "[r]e-opening discovery at this point to allow [the requested] deposition would . . . prejudice Defendant"). Indeed, Rule 30(b)(6) depositions regarding ad hoc data, "marketing and Dear Doctor letters," and "medical education programs" (Motion at 2) would not only be duplicative of discovery already taken, but the process of identifying and preparing corporate witnesses on these broad topics would be unduly burdensome on Smith & Nephew.[11]

Additionally, reopening discovery for Plaintiffs likely would "necessitate even further additional discovery" by Smith & Nephew with respect to these same topics, including potentially amending expert reports and conducting additional depositions of experts and new fact witnesses.

---

[10] Plaintiffs are the parties that first sought the consolidation of the BHR cases into this MDL. United States Judicial Panel on Multidistrict Litigation Transfer Order [D.E. 81 in MDL 2775] at 1. Having reaped the benefits of their choice to pursue an MDL procedure that necessarily imposed a unified general discovery process and timeline, Plaintiffs should not now be allowed to ignore the centralized discovery deadlines when inconvenient to them.

[11] The witnesses most knowledgeable about the topics on which Plaintiffs seek additional corporate testimony are former Smith & Nephew employees—all of whom Plaintiffs have already deposed—and who Smith & Nephew cannot compel to appear for additional depositions.

*See In re Freight Fuel Surcharge*, 138 F. Supp. at 3 (ruling that re-opening discovery in MDL for defendant would "unfairly prejudice plaintiffs" and would result in "a new round of discovery to allow plaintiffs" to address additional discovery sought by defendants); *cf. In re Mutual Funds Investment Litig.*, 608 F. Supp. 2d 670, 671 (D. Md. 2009) (denying motion to amend complaint that would require court to "reopen discovery," which would undermine MDL's goal to "efficiently manage and resolve issues of broad public importance").

**Fourth**, Plaintiffs were not diligent in seeking the deposition testimony now requested. Contrary to Plaintiffs' argument, almost every document (or a duplicate) about which they wish to depose Tim Band was produced *before* one or both of his depositions, such that Plaintiffs already had the opportunity to obtain his testimony regarding these documents. The *only* exception is Exhibit A to Plaintiffs' Motion, which Plaintiffs identify as relevant because it pertains to Smith & Nephew's references to the BHR as a "cash cow." Motion at 5. But Plaintiffs already deposed Mr. Band extensively on this same topic, using other documents containing this same reference. Indeed, Mr. Band's testimony explaining his use of the term "cash cow"—as well as the testimony of other Smith & Nephew witnesses on this same issue—was actually presented at the *Redick* trial. To the extent Plaintiffs felt it was important to depose Mr. Band about this particular document, the proper time to seek leave to do so was immediately after its production in early 2020, not more than a year after the close of BHR discovery, and after Plaintiffs introduced this same document at trial and made Smith & Nephew's use of the term "cash cow" a central theme in the first MDL trial.[12]

---

[12] Plaintiffs were well aware of their ability to seek successive depositions based on newly-produced documents, and did exactly that with former Smith & Nephew employee Dave Telling. There is no excuse for Plaintiffs' failure to request the same thing for Tim Band until long after the close of discovery and after the first bellwether trial. In fact, during Mr. Band's second deposition, counsel for Smith & Nephew told Plaintiffs' counsel that "if you feel like you've had

15

*Fifth*, to the extent Plaintiffs needed additional testimony from Tim Band, corporate representatives, or regarding the documents identified, it was entirely foreseeable both before and during general discovery in this MDL. Indeed, far from being unforeseeable, the topics on which Plaintiffs now seek testimony have figured prominently in this litigation since its outset. *See, e.g.,* MACC [D.E. 124] ¶¶ 32, 34, 68, 429 (allegations about Smith & Nephew Dear Doctor letters); *id*. ¶¶ 39, 54, 55, 96, 149, 152, 255, 280, 282, 429, 480, 491, 492, 501, 505, 508, 511, 512 (allegations about Smith & Nephew's marketing); *id*. ¶¶ 32, 39, 82, 86, 199, 201, 208, 209, 210, 211, 212, 213, 239, 240, 247, 275, 371, 463 (allegations about Smith & Nephew's surgeon training).

In fact, Plaintiffs both foresaw the need to depose Tim Band, and took his deposition, *twice*, for a total of more than 12 hours on the record. Likewise, Plaintiffs questioned a wide variety of witnesses in depositions taken *during* the discovery period about the documents identified in their Motion. Plaintiffs cannot now claim that it was unforeseeable that they may want to ask deposition witnesses about documents that they not only highlighted in discovery, but then sought to pre-admit at the first MDL trial. Plaintiffs were similarly well aware of the relevance of each of the topics about which they now seek testimony from a corporate representative, and deposed myriad witnesses—including in some instances corporate representatives—about those same topics.

*Sixth*, and finally, in light of the extensive discovery that Plaintiffs have already obtained from Tim Band and other witnesses, including about documents and topics identified in their Motion, additional depositions would be duplicative, and unlikely to yield any additional relevant evidence. Additional depositions would merely constitute a second (or even third) bite at the apple

---

documents produced after you decided to take his deposition . . . and you think you need more time on the BHR track, that -- that can be addressed." Band Dep. (Jan. 22, 2020) (Ex. E) at 251.

on top of the already expansive discovery Plaintiffs obtained in this MDL over more than two years.[13]

Accordingly, none of these six factors supports taking additional depositions, and Plaintiffs have not established "good cause" either to re-depose Tim Band or to depose one or more additional Smith & Nephew corporate representatives. *See, e.g., Givens v. Prime Office Prods.*, No. 04-731-CCB, 2005 WL 8174325, at *1 (D. Md. Aug. 10, 2005) (Blake, J.) ("reopening discovery would unfairly allow [plaintiff] another attempt to find support for his claim when he had ample opportunity previously"); *Drasovean*, 2012 WL 5409737, at *2 (denying motion to reopen discovery where plaintiff had not established "good cause," because "[m]ost critically, Plaintiff has not demonstrated that she exercised diligence in attempting to meet the original deadline" and "[a]t this stage of litigation, when discovery has been closed for over nine months, it would be unfair to force Defendant to participate in additional discovery"); *Tube City IMS, LLC*, 2014 WL 4782957, at *4 (denying request for *de bene esse* deposition, because "good cause had not been shown by the plaintiff" pursuant to Rule 16(b)(4)).

## CONCLUSION

For these reasons, Smith & Nephew respectfully submits that Plaintiffs' Motion for Leave to Take *De Bene Esse* Depositions should be denied.

---

[13] Additionally, several of the documents highlighted in Plaintiffs' Motion are irrelevant to the *Mosca* case, because they pertain to marketing plans or communications that occurred **after** her May 17, 2010 implant surgery. *See* Ex. B to Motion (pertaining to future marketing plans discussed on May 21, 2010); Ex. D to Motion (addressing communications outside the United States in June 2010); Ex. F to Motion (marketing presentation in February 2012); Ex. G (letter to doctors in August 2013); Ex. H (internal email and market analysis in November 2012).

17

Dated:  September 27, 2021                                    Respectfully Submitted,

                        */s/ Paul J. Zidlicky*

| | |
|---|---|
| Kim E. Moore | Jana D. Wozniak |
| Timothy F. Daniels | Daniel F. Spira |
| IRWIN FRITCHIE URQUHART & MOORE LLC | SIDLEY AUSTIN LLP |
| 400 Poydras St. #2700 | One South Dearborn |
| New Orleans, Louisiana 70130 | Chicago, Illinois  60603 |
| kmoore@irwinllc.com | jwozniak@sidley.com |
| tdaniels@irwinllc.com | dspira@sidley.com |
| Tel.: (504) 310-2100 | Tel.: (312) 853-7000 |
| Fax: (504) 310-2101 | Fax: (312) 853-7036 |
| | |
| Terri S. Reiskin (Bar No. 05256) | Paul J. Zidlicky (Bar No. 26148) |
| NELSON MULLINS RILEY & SCARBOROUGH LLP | SIDLEY AUSTIN LLP |
| 101 Constitution Ave. NW, Ste 900 | 1501 K Street, N.W. |
| Washington, DC 20001 | Washington, DC 20005 |
| terri.reiskin@nelsonmullins.com | pzidlicky@sidley.com |
| Tel.: (202) 689-2800 | Tel.: (202) 736-8000 |
| Fax: (202) 689-2860 | Fax: (202) 736-8711 |

*Counsel for Defendant Smith & Nephew, Inc.*

## CERTIFICATE OF SERVICE

I, Paul J. Zidlicky, hereby certify that on this 27th day of September, 2021, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

                                                                                                 */s/ Paul J. Zidlicky*
                                                                                                  Counsel for Defendant Smith & Nephew, Inc.